# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————

No. 03-2939

————

Paracelsus Healthcare Corp.,                 *
                                             *
            Plaintiff - Appellant,           *
                                             *   Appeal from the United States
      v.                                     *   District Court for the District
                                             *   of North Dakota.
Philips Medical Systems, Nederland,          *
B.V.,                                        *
                                             *
            Defendant - Appellee.            *

————

Submitted: May 10, 2004
Filed: August 3, 2004

————

Before WOLLMAN, HANSEN and BYE, Circuit Judges.

————

BYE, Circuit Judge.

Paracelsus Medical Corp. appeals the district court's[1] grant of summary judgment finding Paracelsus's breach of warranty claim barred by expiration of the statute of limitations. We affirm.

---

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

I

This is a breach of warranty claim involving a Philips Integris H5000-C Cardiac Imaging Device. Philips Medical manufactured the device which was marketed and sold to Diagnostic Medical Systems, Inc. (DMS), by Philips Electronics. DMS, in turn, sold the device to Dakota Heartland Health System (DHHS), a wholly-owned subsidiary of Paracelsus. Philips Medical and Philips Electronics are separate but related Dutch corporations.

The device was delivered and installed at DHHS on January 12, 1998. On August 2, 1999, the device overheated causing significant damage to various component parts. Paracelsus brought suit against Philips Electronics and DMS alleging the device overheated because it was defectively manufactured and Paracelsus sustained damages in the form of repairs and lost profits as a result of the defect.

Initially, Philips Electronics admitted manufacturing the device. Later, Philips Electronics realized it was mistaken and Paracelsus agreed to allow Philips Electronics to amend its answer. Philips Electronics's amended answer denying it manufactured the device was served September 6, 2001. Thereafter, Paracelsus moved to amend the complaint to add Philips Medical as a defendant. The motion was granted on October 9, 2001, and on October 30, 2001, Philips Electronics's motion for reconsideration was denied. On November 6, 2001, Paracelsus forwarded a copy of its amended complaint to Legal Language Services (LLS), a company specializing in service of process on foreign defendants in accordance with the Hague Convention. Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638. LLS translated the amended complaint into Dutch and prepared the additional documents needed to effect service under the Hague Convention. On November 30, 2001, LLS forwarded the completed documents to Paracelsus's attorney for his signature.

Counsel returned the documents to LLS, which in turn forwarded them to the Central Authority.[2]  The amended complaint and related documents were received by the Central Authority December 12, 2001 - one month prior to expiration of the statute of limitations.  The amended complaint was not, however, served on Philips Medical until February 5, 2002.

Philips Medical moved for summary judgment arguing it was not served before the statute of limitations expired.  The district court agreed and granted the motion.  On appeal, Paracelsus argues the district court erred because 1) once the amended complaint was delivered to the Central Authority, service was complete under N.D. Cent. Code § 28-01-38; 2) once the amended complaint was delivered to the Central Authority, the statute of limitations was tolled under N.D. Cent. Code § 28-01-29, because the Hague Convention is a positive rule of law which could prevent timely commencement of a suit; and 3) the doctrine of equitable tolling applies to toll the statute of limitations during Paracelsus's attempts to serve Philips Medical.  We disagree.

## II

This court reviews a grant of summary judgment de novo, applying the same standard as the district court.  Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999).  Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

---

[2]The Central Authority is the designated authority through which documents may be served in countries belonging to the Hague Convention.  It is not, however, a designated agent for service of process.  Hague Convention, Art. 2.

This is a diversity action and is governed by state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). Statutes of limitations are substantive laws and thus in diversity actions are controlled by state law. See Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997). The district court held, and the parties agree, the case is controlled by North Dakota law.

A.      N.D. Cent. Code § 28-01-38

Paracelsus first argues service was complete under § 28-01-38 once the suit papers were delivered to the Central Authority for service on Philips Medical. We disagree.

Section 28-01-38 provides

An action is commenced as to each defendant when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him. *An attempt to commence an action is equivalent to the commencement thereof within the meaning of this chapter when the summons, with the intent that it shall be actually served, is delivered*:

1. To the sheriff or other officer of the county in which the defendants or one of them usually or last resided; or

2. *To the sheriff or other officer, if a corporation is defendant, of the county in which was situated the principal place of business of such corporation, or in which its general business was transacted, or in which it kept an office for the transaction of business.*

Such an attempt must be followed within sixty days by the first publication of the summons or the service thereof.

(Emphasis supplied).

-4-

Paracelsus argues, by analogy, the Central Authority is the equivalent of a sheriff or other officer, and under § 28-01-38 the suit against Philips Medical was commenced once the summons was delivered to the Central Authority. The district court disagreed, holding the plain language of the statute makes it applicable only when a summons is delivered to the sheriff or other officer located in the county in which the corporate defendant's principal place of business is situated.

Interpretation of a statute is a question of law. Feist v. N.D. Workers Comp. Bureau, 569 N.W.2d 1, 4 (N.D. 1997). "The primary goal when interpreting a statute is to ascertain the legislative intent." State v. Hafner, 587 N.W.2d 177, 179 (N.D. 1998). When interpreting a statute, courts first look to the language of the statute itself and determine whether it is unambiguous. Id. If the statutory language is unambiguous, the court applies the plain language of the statute. Id.

Paracelsus does not contend the statute is ambiguous. Thus, the plain language controls and the plain language of § 28-01-38 indicates an action is commenced only if the summons is delivered to the sheriff or other county officer – not the Central Authority. Further, Paracelsus does not cite nor are we able to locate any North Dakota cases applying the statute in a broader context. Therefore, we must reject Paracelsus's arguments advocating a broader application.

B.     N.D. Cent. Code § 28-01-29

Paracelsus next argues once the amended complaint was delivered to the Central Authority the statute of limitations was tolled under § 28-01-29.

Section 28-01-29 provides, "[w]hen the commencement of an action is stayed by injunction or other order of a court, *or by a statutory prohibition*, the time of the continuance of the stay is not a part of the time limited for the commencement of the action." (Emphasis supplied.)

Paracelsus argues the Hague Convention is a "positive rule of law" creating a statutory prohibition which prevented it from bringing its action against Philips Medical in a timely manner, because once the suit papers were delivered to the Central Authority, Paracelsus no longer had control over when service would occur. In support of its argument, Paracelsus cites Broad v. Mannesmann Anlagenbau, A.G., 10 P.3d 371 (Wash. 2000).

In Broad, the plaintiffs brought a federal diversity action against a German manufacturer alleging its product was defective. Id. at 373. The plaintiffs first attempted service through the Bavarian State Ministry one day before the statute of limitations expired. The attempt was unsuccessful, but under Washington law, once the complaint was filed with the court, the plaintiffs were afforded an additional 90-day period within which to perfect service. Id. at 373-74. The plaintiffs next submitted the suit papers to the German Central Authority for service of process but service was not effected until after the additional 90-day period had expired. The defendant moved for summary judgment, with the plaintiffs arguing the 90-day extension should be tolled because they were prevented by the Hague Convention from serving the defendant in a timely manner. The Ninth Circuit Court of Appeals certified the question to the Washington Supreme Court and the court agreed. Id. at 377-79. In reaching its holding in Broad, the Washington Supreme Court looked to the provisions of a Washington statute nearly identical to § 28-01-29 and concluded the Hague Convention operated as a "positive rule of law" which prevented the plaintiffs from bringing suit, because once the suit papers were turned over to the Central Authority the plaintiffs could no longer control when the defendant would be served. Id. at 378. Broad, however, is distinguishable.

The Hague Convention is a multinational treaty, formed in 1965 for the purpose of creating an "appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." Hague Convention preamble, 20 U.S.T. 361, 362, T.I.A.S. No. 6638.

The Convention sets out specific procedures to be followed in accomplishing service of process. Articles 2 through 6 provide for service through a Central Authority in each country. Article 8 allows service by way of diplomatic channels. Article 19 allows service by any method of service permitted by the internal law of the country in which service is made. Finally, under Article 10,

> Provided the State of destination does not object, the present Convention shall not interfere with--
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Under Article 21 of the Convention, each signatory nation may ratify its provisions subject to conditions or objections.

In Broad, Germany had objected to the alternate methods for serving documents, leaving service through the Central Authority as the sole means by which the defendant could be served. Id. at 373. Here, other methods of service were available to Paracelsus because the Netherlands had not objected to the alternatives. Accordingly, the Hague Convention did not operate in this case as a "positive rule of law" preventing Paracelsus from bringing suit. While Paracelsus lost control over service of the documents once they were delivered to the Central Authority, other options were available which would not have required Paracelsus to rely on the Central Authority.

Paracelsus contends there is no evidence in the record showing the alternative methods were feasible or would have resulted in more effective service of process. The argument, however, improperly shifts the burden of proof. See Kimball v. Landies, 652 N.W.2d 330, 339 (N.D. 2002) ("A party who claims the benefit of an exception to a statute of limitations bears the burden of showing the exception."). Section 28-01-29 is applicable in instances where a statutory provision prevents a party from bring suit. Here, Paracelsus has failed to present any evidence showing it was prevented from bringing suit by pursuing any of the alternate means allowed under the Hague Convention for service of process.

C.    Equitable Tolling

Paracelsus next argues the statute of limitations was tolled by the doctrine of equitable tolling once the suit papers were delivered to the Central Authority.

North Dakota has yet to adopt the doctrine of equitable tolling to toll the running of a statute of limitations. See Reid v. Cuprum SA, de C.U., 611 N.W.2d 187, 189 (N.D. 2000). The North Dakota Supreme Court has, however, stated a plaintiff arguing for adoption of the doctrine must show 1) timely notice, 2) lack of prejudice to the defendant, and 3) reasonable and good-faith conduct on the part of the plaintiff. Id. In Reid, the court declined to adopt the doctrine holding the plaintiffs had not acted reasonably by persisting in pursuing an ineffective means of effecting service of process while ignoring alternate methods. Id. at 190-91.

As in Reid, Paracelsus did not act reasonably when it ignored the alternatives allowed under the Hague Convention for service of process. Paracelsus knew at least eight months (and perhaps as many as seventeen months) before the statute of limitations was to expire it had named the wrong defendant. Paracelsus should have recognized the difficulties involved in serving a foreign corporation and immediately used every method available to accomplish service within the limitations period.

Moreover, Paracelsus's failure to explore alternate methods for service of process was especially unreasonable because the amended summons and complaint were not transmitted to the Central Authority until one month before the statute of limitations expired.

III

The district court's order granting summary judgment is affirmed.

_____